**NO. 24-4253**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## ALEXUS PAIGE TYSON,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT**

_____

**BRIEF OF APPELLANT**

_____

**Gregory Dolin
UNIVERSITY OF BALTIMORE SCHOOL OF LAW
1420 N. Charles Street
Baltimore, MD 21201
(410) 837-4610
gdolin@ubalt.edu**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.......................................................................... ii

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF THE ISSUES ....................................................................2

STATEMENT OF THE CASE.........................................................................3

    Statement of Facts.........................................................................4

    Procedural History ......................................................................10

SUMMARY OF ARGUMENT.....................................................................12

ARGUMENT ...............................................................................................13

    A.    Standard of Review .......................................................13

    B.    Issues Identified by Counsel ........................................13

        1.    Ineffective Assistance of Counsel ...........................14

        2.    Requirement that the Defendant Admit All Elements of the Offense .......................................................16

        3.    Reasonableness of the Sentence Imposed.................16

        4.    Pronouncing All Conditions of Supervision in Open Court.......................................................20

CONCLUSION ............................................................................................22

POSITION REGARDING ORAL ARGUMENT .................................................23

CERTIFICATE OF COMPLIANCE .................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anders v. California*,
    386 U.S. 738 (1967)...............................................................12, 13

*Gall v. United States*,
    552 U.S. 38 (2007)........................................................................17

*McCoy v. Wisconsin*,
    486 U.S. 429 (1988)......................................................................12

*Penson v. Ohio*,
    488 U.S. 75 (1988).......................................................................12

*Rita v. United States*,
    551 U.S. 338 (2007)................................................................18, 19

*United States v. Blue*,
    877 F.3d 513 (4th Cir. 2017) .......................................17, 19, 20

*United States v. Booker*,
    543 U.S. 220 (2005).....................................................................17

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) .......................................................17

*United States v. Craig*,
    985 F.2d 175 (4th Cir.1993) ........................................................14

*United States v. Diggles*,
    957 F.3d 551 (5th Cir. 2020) .......................................................21

*United States v. Galloway*,
    749 F.3d 238 (4th Cir. 2014) .......................................................14

*United States v. Hernandez*,
    603 F.3d 267 (4th Cir. 2010) .......................................................18

*United States v. Johnson*,
    410 F.3d 137 (4th Cir. 2005) ........................................................14

*United States v. Lynn*,
    592 F.3d 572 (4th Cir. 2010) ..................................................19, 20

*United States v. Mastrapa*,
    509 F.3d 652 (4th Cir. 2007) ........................................................16

*United States v. McDonald*,
    850 F.3d 640 (4th Cir. 2017) ........................................................17

*United States v. Montes-Pineda*,
    445 F.3d 375 (4th Cir. 2006) ..................................................19, 20

*United States v. Moreland*,
    437 F.3d 424 (4th Cir. 2006) ........................................................20

*United States v. Nnamani, et al.*,
    No. 8:22-cr-00023-LKG-2 (D. Md.) ...............................................1

*United States v. Rogers*,
    961 F.3d 291 (4th Cir. 2020) ............................................20, 21, 22

*United States v. Singletary*,
    984 F.3d 341 (4th Cir. 2021) ........................................................21

*United States v. Smith*,
    62 F.3d 641 (4th Cir.1995) ..........................................................14

*United States v. White*,
    850 F.3d 667 (4th Cir. 2017) ........................................................18

**Statutes**

18 U.S.C. § 20 ...................................................................................5

18 U.S.C. § 1349 ...........................................................................3, 15

18 U.S.C. § 3231 ...............................................................................1

18 U.S.C. § 3553(a) ....................................................................17, 19

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 2255 ...............................................................................14

**United States Sentencing Guidelines**

U.S.S.G. 3E1.1(a) .............................................................................14

U.S.S.G. 3E1.1(b) .............................................................................15

U.S.S.G. ch. 5, pt. A ...............................................................4, 9, 13, 18

U.S.S.G. § 4C1.1 ...............................................................................9

U.S.S.G. § 4C1.1(a) ...........................................................................4

U.S.S.G. § 4C1.1(b) ...........................................................................4

**Rules**

Fed. R. App. P. 4(a)(1)(A) ..................................................................1

## JURISDICTIONAL STATEMENT

This appeal is from the plea and sentence of Alexus Paige Tyson ("Ms. Tyson" or "the Appellant") in the United States District Court of the District of Maryland before the Honorable Lydia Kay Griggsby. Because Ms. Tyson was charged with an "offense[] against the laws of the United States," the district court had jurisdiction under 18 U.S.C. § 3231. The sentence was imposed on May 2, 2024, and the final judgment was docketed on May 6, 2024. *United States v. Nnamani, et al.*, No. 8:22-cr-00023-LKG-2 (D. Md.). JA6 (ECF 118, 119).[1] Ms. Tyson timely filed her Notice of Appeal on the same day that the judgment was entered. JA147; *see* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction over appeals from final judgments of the district court under Title 28 U.S.C. § 1291.

---

[1] The judgement order was subsequently amended on June 21, 2024, postponing, in response to Appellant's unopposed motion, ECF 134, Appellant's voluntary surrender date to Monday, July, 29, 2024. ECF 137.

## STATEMENT OF THE ISSUES

After an extensive review of the entire record in this case, Counsel for the Appellant has concluded that there are no meritorious grounds to be raised on the Appellant's behalf. This Court must review the entire record in this case to determine whether there are any meritorious issues that Counsel has overlooked.

In the alternative, Counsel submits to this Court that the sentence imposed of 15 months, which falls within the advisory guidelines range for an offense level of 14 with criminal category I, should be reviewed for reasonableness.

## STATEMENT OF THE CASE

The Appellant, Alexus Tyson, was indicted on January 27, 2022, and charged with one count of "Conspiracy and Scheme to Defraud" in violation of 18 U.S.C. § 1349, JA9.[2]  On September 29, 2023, Ms. Tyson entered into a written plea agreement with the Government agreeing to plead guilty to the Indictment, in exchange for the Government agreeing not to oppose a 2-level reduction in the offense level to account for Appellant's acceptance of responsibility, and to recommend an additional 1-level reduction in recognition of Appellant's timely notification of intent to plead guilty.  JA57-58.[3]

As part of the plea agreement, the parties stipulated that under the United States Sentencing Guidelines, the "total offense level" for the charge to which Ms. Tyson was pleading guilty (taking into accounts all relevant increases and reductions) was 16.  JA57-58; JA33-34.

Ms. Tyson formally entered her plea in front of the Hon. Lydia Kay Griggsby on January 4, 2024, JA16-53, and was formally sentenced on May 2, 2024, JA80-

---

[2] On April 27, 2022, the Government filed a superseding indictment; however, no additional charges were leveled against Appellant, and as relevant here, the two documents are not materially different.  Accordingly, all citations to the indictment document are the citations to the operative superseding, rather than the original document.

[3] The Agreement was docketed with the District Court on January 4, 2024—the day Ms. Tyson was re-arraigned.  *See* JA5 (ECF 101).

3

140.  The District Court entered final judgment four days later, on May 6, 2024 sentencing Ms. Tyson to 15 months imprisonment, as well as a three-year term of supervised release following the incarceration.  JA141-146.  The Court also entered a restitution order in the amount of $129,967.22 and a imposed a $100 mandatory assessment.  JA145-146.  The sentence was within the range of the U.S. Sentencing Guidelines for an offense level of 14,[4] and a defendant with the criminal history category I.  JA159 (noting that under the Guidelines, the recommended sentence is between 15 and 21 months); U.S.S.G. ch. 5, pt. A.

The Appellant filed notice of appeal on May 6, 2024.  JA147.

**Statement of Facts**

At the Appellant's arraignment the Government recited facts that parties "agree[d] that if th[e] case had proceeded to trial, the government would have proven … beyond a reasonable doubt."  JA41.  The recitation was as follows:

> The defendant, Alexus Paige Tyson, conspired with Travis Osita Nnamani and Brianna Lee Cartledge to defraud Bank of America and other financial institutions by creating fake checks based on information that Tyson intercepted while employed with the United States Post Office.

> At the times relevant to this case, Tyson was a resident of Maryland and employed in Washington, D.C., as a United States Postal Service carrier.  The victim banks were financial

---

[4] Although Ms. Tyson's agreed upon offense level was 16, she qualified for a further 2-level reduction under Guideline's Section 4C1.1(a) and (b) because she was a "zero-point" offender.

institutions within the meaning of 18 U.S.C. § 20 in that their deposits were insured by the Federal Deposit Insurance Corporation.

Tyson, Cartledge and other co-conspirators utilized their positions as USPS employees to wrongfully access USPS money orders and individual mail in the possession of the USPS in order to obtain unlawfully and without authorization personal information of victim individuals and victim businesses.

Nnamani, on his own, and with the assistance of other co-conspirators, created false and fraudulent checks drawn on the bank accounts of the victim individuals whose information Nnamani received from Tyson, Cartledge and other co-conspirators.

Nnamani, Tyson, Cartledge, and their co-conspirators fraudulently negotiated the false checks at the victim financial institutions.

Tyson participated in the conspiracy from on or about July 29th, 2019, to on or about October 7th, 2020. During the scheme, Tyson sent Nnamani images of at least nine separate checks that contained personal identifying information with the intent that the information be used in order to create fake checks and steal from victim accounts. Tyson abused her position of trust as a USPS mail carrier in a manner that significantly facilitated the commission or concealment of the crime.

On or about October 19th, 2019, Nnamani sent a text message to Tyson requesting that she "please take pics of checks for me today" and instructing Tyson to open a letter containing a check, photograph the check, send the photograph to Nnamani, and then reseal and deliver the mail containing the check.

Tyson did so and sent an image of a Liberty Mutual CitiBank check with check number ending 3595.

Nnamani sent images through text message to Tyson demonstrating how he washed and counterfeited the Liberty check Tyson had just send him.

Tyson sent a text message to Nnamani in response asking, "How you splitting the money?" and "So how much I'm getting?"

Nnamani responded, in part, "I deposit this in a bank account," and he was "about to cook this one up."

Nnamani sent a text message to Tyson, "Lovuah, I just made a drop for 2468 on this Capital One with that food. I pray to God it pop on," referring to the Liberty check.

The investigation revealed that Nnamani did, in fact, then deposit the Liberty check at a Capital One bank branch for four thousand -- or $2,468.

On or about October 11th, 2019, Tyson sent a text message to Nnamani stating, "Can you help me make 50 bands?" "Band" being a slang word for $1,000.

Nnamani responded on or about October 16th, 2019, with "Send me your first and last name so I can get this started," to which she responded with Alexus Tyson.

On or about October 17th, 2019, Tyson deposited a counterfeit check for $9,500 into a PNC Bank account that was drawn upon the personal checking account of Victim A. On that same day, she was -- she also deposited another counterfeit check for $8,000 into another PNC account that was drawn upon the personal checking account of Victim A. These checks were provided to Tyson by Nnamani and written from a checkbook he

6

created with Victim A's information. These checks were deposited into Tyson's personal PNC accounts.

On or about October 18th, 2019, Nnamani sent Tyson a text saying "withdrawal from $8,000 from growth, 9,500 from spend," to which she replied, "they only letting me do 5,000."

Since the transaction was taking a long time, Nnamani texted Tyson, "ask if you can speak to her or call me, verify right then and there, because it's too long."

While the checks in question had Victim A's account information, they had Nnamani's personal cell number that the bank could reference to verify the check.

On or about October 24th, 2019, Tyson sent Nnamani a check asking, "How was you splitting it so I can put it in this other account?"

To which he responded, "Take 3,500 and put it in the other account."

On or about September 2nd, 2020, Tyson arranged a meeting with Nnamani and seven USPS employees at a restaurant in Greenbelt, Maryland, to similarly recruit them to participate in this scheme. Nnamani subsequently referenced the meeting in an electronic conversation wherein he discussed having a meeting with eight postal workers and that he needed IDs to cash federal stimulus checks.

Nnamani provided images of several stimulus checks during the electronic communications.

On or about September 4th, 2020, Tyson provided Nnamani with an image of a United States Treasury tax refund check in the amount of $15,070.28.

On or about September 15th, 2020, Nnamani sent Tyson a text message which contained an image of a Chase Bank deposit receipt showing that the Treasury refund check had been deposited.

On October 7th, 2020, Nnamani sent Tyson a text message about the refund check saying "they need somebody to verify as the person, so I want to be Lauren and James."

Also on or about September 15th, 2020, Tyson sent text messages to Nnamani stating, "I have a BOA check, 1,000, don't have pic," and that it was a company check.

On October 7th, 2020, Nnamani sent a text message to Tyson saying, "Obviously you must be retarded thinking I ran off and the money is still there. So if you want to walk in or got somebody to walk in and act like them, cool. 14K is there. They need somebody to verify as the person. So I want to be Lauren and James, cool?"

This message refers to the aforementioned refund check in the amount of $15,070.28. The original, legitimate recipients for the check were Lauren and Justin.

The actual loss due to Tyson's direct participation in the fraudulent scheme was at least $35,038.28. In total, the foreseeable intended loss during Tyson's participation in the fraudulent scheme was at least $129,967.22.

JA 41-46 (original orthography preserved).[5]

---

[5] The factual bases of the plea also appear in Attachment A to the plea agreement, JA64-66, which Ms. Tyson stipulated to, and which the Court acknowledged receiving, JA 26, 46.

Ms. Tyson agreed that "the government [could] prove the facts" recited above. JA47.  The District Court accepted the plea.  JA48.

A pre–sentence report ("PSR") was prepared.  JA148-167.   The PSR calculated the total offense level to be 14, consistent with the parties' agreement to credit Ms. Tyson with a 3-level reduction for early acceptance of responsibility and further taking into account an additional 2-level reduction under U.S.S.G. § 4C1.1. JA154.   Neither side filed objections to the report.  JA84; JA162.

The Sentencing Guidelines' recommended sentencing range for an individual with Criminal History Category I and an offense level 14 is 15 to 21 months of imprisonment.  JA159; U.S.S.G. ch. 5, pt. A.

At sentencing, the Government recommended a carceral sentence of 21 months, JA95; JA98; *see also* JA73, whereas Ms. Tyson argued for "a sentence of non-incarceration with a term of supervised release and a term -- initial term of supervised release to be served on home detention," JA103; *see also* JA168; JA185.  Although no witnesses testified at the sentencing hearing, the Court received and considered both parties' sentencing memoranda, the pre-sentence report, and "certain submissions from the defense," specifically, "three character letters" which were submitted on behalf of Ms. Tyson.  JA74-79. Ultimately, the Court imposed a sentence which was below that sought by the Government, but above that sought by Appellant.

**Procedural History**

The procedural history of this matter is generally set forth in the preceding section. This section, therefore, will focus on the District Court's sentencing decision for that decision may be of particular importance to this Court's review of the entire record.

One particular issue is of note.  Ms. Tyson was one of three defendants charged in this matter, and was the last one sentenced.  JA89.  In considering the sentence, the court below was presented with evidence of sentences imposed on the two co-defendants, one of whom received a sentence above that of Ms. Tyson, and one who received a sentence below.  *See* JA99 (noting that one co-defendant was sentenced to a 36-month term of imprisonment); JA114 (noting that another co-defendant was sentenced to a "a two-year period of supervision; the initial six months were on home detention.").  The Court acknowledged the need to avoid unwarranted sentencing disparities among co-defendants, and requested an explanation from the Government as to why a higher sentence was recommended for Ms. Tyson than for one of the co-defendants.  *See* JA90-96.  The Court ultimately considered the explanation the Government offered (as well as the arguments offered by Appellant) and settled on a carceral sentence at the lower end of the recommended guidelines.  JA131-132.

The after setting forth its statement of reasons for the record, the District Court imposed a sentence of 15 months, followed by a three-year term of supervised release. JA134; JA142-144. The Court also imposed a restitution order in the amount of $129,967.22, for which Appellant was held to be jointly and severally liable with her co-defendants. JA135; JA145-146.

The present appeal followed.

## SUMMARY OF ARGUMENT

This brief is submitted to the Court pursuant to the decision in *Anders v. California*, 386 U.S. 738 (1967), as more fully explained in *McCoy v. Wisconsin*, 486 U.S. 429, (1988) and *Penson v. Ohio*, 488 U.S. 75 (1988).

Counsel for the Appellant has determined, after a conscientious examination of the whole record of the Appellant's case, that there are no meritorious grounds for appeal. In the alternative, Counsel submits to this Court that the sentence imposed of 15 months, which is withing the advisory guideline range for an offense level 14 with Category I criminal history, but which is above that imposed on one of the co-defendants, should be reviewed for reasonableness.

# ARGUMENT

### A.    *Standard of Review*

The standard of review of an Anders submission is *de novo* of the entire record and all pertinent documents. *Anders*, 386 U.S. at 744.

### B.    *Issues Identified by Counsel*

At the outset, it should be noted that Ms. Tyson waived her right to appeal either the conviction or the sentence imposed so long as the sentence was below the maximum recommended by the appropriately calculated federal sentencing guidelines range. *See* JA58-59; JA35-37. During her plea colloquy the waiver was explained to her, and Ms. Tyson indicated that she understood her rights and the import of waiving them. JA35-37. Because the maximum recommended guidelines sentence for offense level 14 with category I criminal history is 21 months, *see* JA159, U.S.S.G. ch. 5, pt. A, and because the sentence imposed was below that maximum, it would generally appear that the waiver of appellate rights contained in Ms. Tyson's plea agreement precludes the present appeal.

Nonetheless, Counsel for the Appellant has conducted a thorough and extensive search of the record in order to identify any meritorious grounds for an appeal. Having done so, the undersigned counsel has concluded that there are no such grounds to be raised.

The following issues have been considered by the undersigned counsel, none of which appear to be meritorious.

## 1.    Ineffective Assistance of Counsel

"Even if the court engages in a complete plea colloquy, a waiver of the right to appeal may not be knowing and voluntary if tainted by the advice of constitutionally ineffective trial counsel." *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005) (citing *United States v. Craig*, 985 F.2d 175, 178 (4th Cir.1993)).  However, claims for ineffective assistance of counsel are generally not cognizable on direct appeal and must await a motion brought under 28 U.S.C. § 2255.  *See United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014) ("It is well established that 'a defendant may raise [a] claim of ineffective assistance of counsel in the first instance on direct appeal *if and only if it conclusively appears* from the record that . . . counsel did not provide effective assistance. Otherwise, [he] must raise [his] claim in the district court by a collateral challenge pursuant to 28 U.S.C. § 2255 . . . .'") (quoting *United States v. Smith*, 62 F.3d 641, 651 (4th Cir.1995)) (emphasis in original).

From the record, it does not appear, much less conclusively, that Ms. Tyson's trial counsel was ineffective.  The trial counsel negotiated a plea agreement under which the Government was not only not going to oppose a 2-level "acceptance of responsibility" reduction under U.S.S.G. 3E1.1(a), but was also going to support an

additional 1-level reduction under U.S.S.G. 3E1.1(b).  Furthermore, Appellant's trial counsel conducted research into Ms. Tyson's family and social background and researched sentences imposed in comparable cases.  *See* JA102-105.  The trial counsel prepared and submitted statements of support on behalf of Appellant, *see* JA74-79 and vigorously argued at sentencing for a non-carceral sentence.  JA102-115.

Further still, Counsel for Ms. Tyson convinced the Court to take account of Ms. Tyson's personal characteristics and behavior, *see* JA129; JA132-133 leading to a sentence below that which was recommended by the Government.  *Compare* JA88 (Government recommending a 21-month term of imprisonment), *with* JA133-134 (the Court explaining that in light of mitigating factors it is choosing a sentence below the high end of the recommended range).

In light of the fact that Ms. Tyson was potentially facing a term of 30 years, *see* 18 U.S.C. § 1349, the trial counsel's advice to plead guilty and secure a more favorable sentence, does not "conclusively appear[]" to be constitutionally deficient.  The trial counsel's argument for a downward departure from the guidelines range, though ultimately unsuccessful, *see* JA119; JA134 also indicates that the counsel was not obviously constitutionally deficient.

For these reasons, a claim for ineffective assistance of counsel (and with it, involuntariness of the guilty plea) is, in the view of undersigned Counsel, inappropriate to this stage of the proceedings.

### 2.     Requirement that the Defendant Admit All Elements of the Offense

In *United States v. Mastrapa*, 509 F.3d 652 (4th Cir. 2007) this Court held that prior to accepting a guilty plea, the District Court must be satisfied that a factual basis for such a plea exists and is admitted by the defendant. Under *Mastrapa*, failure to admit to the factual basis supporting the charge requires a reversal of a guilty plea and a remand for a new Rule 11 colloquy. *Id.* at 655. Unlike the defendant in *Mastrapa* who protested Government's characterization of his activities, *id.* at 658-59, Ms. Tyson admitted the factual basis for her plea. *See* JA47. For this reason, the undersigned counsel has concluded that a *Mastrapa* claim would not be meritorious.

### 3.     Reasonableness of the Sentence Imposed

Whether or not this Court concludes that Ms. Tyson's appellate rights with respect to the sentence imposed were properly restored by the District Court, it must still ensure that the District Court complied with the Supreme Court's directives on the proper sentencing procedures.

This Court reviews the sentence imposed by the district court for reasonableness. *United States v. Booker,* 543 U.S. 220 (2005). In reviewing the sentence imposed, this Court must

> first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 552 U.S. 38, 51 (2007). Then, "[i]f, and only if, [this Court] find[s] the sentence procedurally reasonable can [it] consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017) (quoting *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)). *See also Gall*, 552 U.S. at 51 ("Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.").

"[T]he district court must begin its sentencing proceeding 'by correctly calculating the applicable Guidelines range .... [T]he Guidelines should be the starting point and the initial benchmark." *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017) (quoting *Gall*, 552 U.S. at 49). The District Court must then consider the advisory guidelines range in conjunction with the factors outlined in 18 U.S.C.

17

§ 3553(a) and other appropriate grounds for a departure of variance. *United States v. Hernandez*, 603 F.3d 267, 270 (4th Cir. 2010).

The District Court followed this procedure. *See* JA85-87. Both the Government and Ms. Tyson agreed that the District Court calculated the guideline range correctly. JA87. The District Court also considered the relevant factors in imposing the sentence, including Ms. Tyson's prior family and social history, and sentences imposed on similarly situated defendants. JA129-134. Thus, in the considered view of the undersigned counsel, the argument that the sentence is procedurally flawed would not be meritorious.

Next, in determining the substantive reasonableness of the sentence, this Court takes the view that "[a] within-Guidelines range sentence is presumptively reasonable." *United States v. White*, 850 F.3d 667, 674 (4th Cir. 2017). *See also Rita v. United States*, 551 U.S. 338, 347 (2007) (permitting, though not requiring, appellate courts to "apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines.").

In this case, the Appellant's sentence of 15 months was within the guidelines range for an offense level 14 with criminal category I. JA159; U.S.S.G. ch. 5, pt. A. Thus, the sentence imposed is presumptively reasonable, *White*, 850 F.3d at 674; *Rita*, 551 U.S. at 347.

Finally, the district court must adequately explain its sentence to allow the appellate courts to engage in a meaningful review. *See United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) ("[A] court must demonstrate that it 'considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority.'") (quoting *Rita*, 551 U.S. at 356).

The only potential issue of note is that the sentence imposed on Ms. Tyson exceeds that imposed on one of her co-defendants, and thus may be evidence of an unwarranted sentencing disparity among co-defendants. However, in view of the undersigned, the trial judge adequately explained why the three co-defendants each received a different sentence. Under this Court's precedent that is sufficient.

This Court has previously held that if the sentencing court "fail[s] to explain why it rejected [a defendant's] nonfrivolous arguments for a downward departure," any sentence imposed is procedurally unreasonable, and must be vacated. *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) (citing *Lynn*, 592 F.3d 572). At the same time, this Court recognized that the sentencing "court need not robotically tick through § 3553(a)'s every subsection," so long as the "court's explanation [is] elaborate enough to allow "an appellate court to effectively review the reasonableness of the sentence." *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006) (internal quotations omitted).

19

The District Court's  explanation of the sentence that was ultimately imposed spans more than five full pages of the transcript, JA129-134, and the trial judge explicitly stated that while she considered Ms. Tyson's arguments regarding sentences imposed on other defendants, she also explained that she took into account Ms. Tyson's particular role in the conspiracy.  JA131-132.

Thus, the District Court's explanation of the sentence imposed, in the opinion of the undersigned counsel, meets the requirements of *Blue*, *Lynn*, and *Montes-Pineda*, *supra*, and is sufficient to permit this Court to engage in meaningful review of the sentence below.  The explanation provided at JA129-134 shows that the court below did not consider an improper basis when imposing a sentence, and satisfies the requirement that a sentencing court not expressly reject a policy articulated by Congress or the Sentencing Commission.  *See United States v. Moreland,* 437 F.3d 424, 434 (4th Cir. 2006).  Accordingly, it does not appear that the District Court abused its discretion in imposing a term of imprisonment of 15 months, and consequently, the undersigned counsel believes that an appeal on this issue would not be meritorious.

4.     Pronouncing All Conditions of Supervision in Open Court

In a series of cases beginning in 2020, this Court required sentencing judges, when imposing non-mandatory conditions of supervised release, to pronounce those conditions in open court. *See United States v. Rogers*, 961 F.3d

291, 296 (4th Cir. 2020).  Failure to do so requires a *vacatur* of the sentence and a remand for a proper sentencing procedure where the defendant is given an opportunity to object to a particular condition of supervision at the time that such a condition is imposed.  *Id.* at 298 ("If a condition is discretionary, the court must pronounce it to allow for an objection.") (quoting *United States v. Diggles*, 957 F.3d 551, 558 (5th Cir. 2020)); *United States v. Singletary*, 984 F.3d 341, 346 (4th Cir. 2021) (holding that the appropriate "remedy for [a Rogers] error is not … simply to strike the [extraneous] conditions from the written judgment. Rather … it is to vacate the sentence and remand for the district court to resentence.").

The undersigned counsel carefully reviewed the sentencing transcript to ensure that the District Court complied with the requirements of *Rogers* and its progeny.  The trial judge went over each of the conditions of supervised release one-by-one, and elicited an affirmative response from Appellant that she understood the nature of the condition and the fact that she will be subject to it.  *See* JA122-127.  The trial judge then again, prior to formal pronouncement of the sentence specifically referred to the conditions listed in the PSR and specifically stated that they will form a part of the judgment, *see* JA134-135, as permitted by this Court's precedent.  *See Rogers*, 961 F.3d at 299 ("[A] district court may satisfy its obligation to orally pronounce discretionary conditions through incorporation … and then detailing those conditions in the written judgment.").

Accordingly, it does not appear that the District Court committed a *Rogers* error, and the undersigned counsel has concluded that this issue is not meritorious.

## CONCLUSION

For the foregoing reasons, the Appellant, Alexus Tyson, respectfully requests that this Court examine the record in its entirety and grant relief to her as appears warranted.

Respectfully submitted this the 9th day of July, 2024.

/s/ Gregory Dolin
Gregory Dolin
University of Baltimore School of Law
1420 N. Charles Street
Baltimore, MD  21201
(410) 837-4610
gdolin@ubalt.eu

*Counsel for the Appellant*

## POSITION REGARDING ORAL ARGUMENT

Counsel for the Appellant does not request that the Court consider granting an oral argument in this matter.

/s/ Gregory Dolin
Gregory Dolin
University of Baltimore School of Law
1420 N. Charles Street
Baltimore, MD  21201
(410) 837-4610
gdolin@ubalt.eu

*Counsel for the Appellant*

23

## CERTIFICATE OF COMPLIANCE

1.     This document complies with type-volume limits because, excluding the parts

of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure

statement, table of contents, table of citations, statement regarding oral

argument, signature block, certificates of counsel, addendum, attachments):

This document contains <u>4,424 words</u>.

2.     This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface

using <u>Microsoft Word</u> in <u>14 point Times New Roman.</u>

Dated:  July 9, 2024                    Respectfully submitted,

<u>/s/ Gregory Dolin</u>
Gregory Dolin
University of Baltimore School of Law
1420 N. Charles Street
Baltimore, MD  21201
(410) 837-4610
gdolin@ubalt.eu

*Counsel for the Appellant*